# EXHIBIT "1"

ELECTRONICALLY FILED
4/19/2017 1:16 PM
46-CV-2017-900055.00
CIRCUIT COURT OF
MACON COUNTY, ALABAMA
DAVID LOVE, JR., CLERK

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | |
|---|---|
| KAELA NELSON and<br>SHANNON SPIRES,<br><br>    Plaintiff,<br><br>v.<br><br>TUSKEGEE UNIVERSITY,<br>THOMPSON FACILITIES SERVICES,<br>LLC, DEFENDANTS "A," "B,"<br>and "C," whether singular or plural,<br>those persons, corporations, firms or<br>other entities whose wrongful conduct<br>caused the injuries and damages to<br>Plaintiff; and FICTITIOUS<br>DEFENDANTS "D," "E," and "F,"<br>whether singular or plural being<br>those persons, corporations, firms,<br>or other entities, which is the<br>successor in interest of any of the<br>persons, corporations, firms, or<br>other entities described above; all of<br>whose true and correct names are<br>unknown to the Plaintiff at this time,<br>but will be added by amendment<br>when ascertained,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. CV 17-_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### STATEMENT OF THE JURISDICTION

This is a cause of action based on negligence and wantonness. The amount in controversy exceeds the jurisdictional requirement of this Circuit Court as may be assessed by a jury.

### STATEMENT OF PARTIES

1. Plaintiff, Kaela Nelson is an individual over the age of 19 years and is a resident of Georgia.

1

2. Plaintiff, Shannon Spires is an individual over the age of 19 years and is a resident of Georgia.

3. Defendant Tuskegee University (hereinafter referred to as Tuskegee University) is a private institution of higher learning located in Tuskegee, Alabama in Macon County.

4. Defendant Thompson Facilities Services, LLC, (hereafter referred to as TFS) is a Virginia Company, doing business in Macon County, Alabama by agent.

5. Fictitious Defendants A,B and/or C are those unknown persons, firms, partnerships, corporations or other entities, who participated or assisted in the wrongful acts alleged in this Complaint, and whose true names and legal identities are otherwise unknown at this time, but will be added by amendment when ascertained.

6. At all times relevant to this Complaint, Plaintiff was a student at Tuskegee University and was a student resident on the campus of Tuskegee University.

## STATEMENT OF THE FACTS

7. Plaintiff Kaela Nelson, was enrolled as a student at Defendant Tuskegee University in the fall of Semester of 2015 which begin on or about August 17, 2015.

8. Plaintiff Nelson was an Architect major and the recipient of several academic scholarships.

9. Plaintiff Spires, who is the mother of Plaintiff Nelson obtained student loans for Plaintiff Nelson and also informed Defendant Tuskegee University that her daughter Plaintiff Nelson had asthma.

10. Defendant Tuskegee University assigned Plaintiff Nelson to room 210 in Younge Hall residential dormitory, owned and operated by Defendant Tuskegee University.

11. Both Plaintiff Spires and Plaintiff Nelson were present when Plaintiff Nelson moved into her assigned room (210).

12. Both Plaintiffs noticed that the room was freshly painted and were told so by a Tuskegee University employee.

13. On or about November 21, 2012, Defendant TFS entered into a contract with Defendant Tuskegee University to provide facility services: housekeeping, grounds maintenance . . . housing maintenance, plant operations, event set ups, office moves, sanitation . . . equipment repair and emergency services.

14. Defendant TFS further agreed that these services would extend to all residence halls on the campus of Defendant Tuskegee University.

15. Defendant TFS agreed to provide an environment which is aesthetically pleasing, safe and clean.

16. The scope of services in the aforesaid contract included building operations and maintenance, including mechanical and electrical engineering, housing, maintenance environmental, waste management and carpentry and painting.

17. The contract further provided that Defendant TFS reports directly to Defendant Tuskegee University's Director of facilities management.

18. Additionally Defendant TFS agreed to be "responsible for responding to all service requests in a timely manner."

19. Defendant TFS agreed to immediately notify Defendant Tuskegee University of any unsafe, unhealthy or in any other way would cause an accident.

20. Defendant TFS agreed "to take all reasonable precautions to protect the safety of employees, students and other persons and to protect property from damage.

21. Defendant TFS agreed "to ensure a safe, attractive, functional and efficient environment".

22. Defendant TFS agreed to immediate respond to "any problem affecting the safety" of students.

23. Defendant TFS agreed to "notify appropriate regulatory agency" of all occurrences that deviate from compliance and laws".

24. The contract purports to exclude from the scope of services removal or mitigation of mold or mildew. However, despite this language TFS waived its terms by its conduct in removing and mitigating mold throughout Tuskegee University buildings.

25. Defendant TFS had direct knowledge of all of the mold problems in Younge Hall, and took direct action to remove or mitigate the mold problems on multiple occasions.

26. Defendant TFS in some instances restricted access to certain dorm rooms in Younge Hall because of the mold.

27. Defendant TFS in some instances took rooms off line in Younge Hall until it could mitigate or remove the mold from that particular location.

28. Defendant TFS worked hand in hand with Defendant Tuskegee University to mitigate and remove mold from Younge Hall.

29. Defendant TFS worked hand in hand with Defendant Tuskegee University to conceal the presence of mold thought out Younge Hall. Defendant TFS did not warn or otherwise attempt to keep students safe from mold exposure in student dormitory rooms.

30. Defendant TFS is an effort to conceal mold from Plaintiff painted over the mold in room 210 in August 2015, prior to Plaintiff Nelson moving into room 210.

31. Within 3 weeks of moving into room 210, Plaintiff Nelson became extremely ill and fatigued.

32. Eventually Defendant Nelson was moved to room 417, which was also determined to be mold infested.

33. She began to have nose bleeds and her roommate was diagnosed with bacterial infection of the lung.

34. In December 2015 Defendant Nelson was diagnosed with asthma, cough, shortness of breath, and allergic rhistis due to mold.

35. As a result Plaintiff Nelson has had sever bouts of severe anxiety depression, loss of appetite.

36. Plaintiff Nelson was unable to attend classes because Plaintiff Nelson began to suffer from headaches and respiratory problems; rashes begin to appear over her body and severe nose bleeds occurred.

37. Plaintiff Nelson was eventually forced to withdraw from school because of her constant illness do to mold exposure.

38. To date, Defendant Nelson is still suffering from the lingering effects of mold exposure.

39. She has not been able to continue her pursuit of becoming an Architect and now doubts if she will ever be able to pursue her lifelong dream of becoming an Architect.

40. Defendant Nelson left Tuskegee University because of this and enrolled in the Savannah College of Arts and Designs, but had to drop out due to her constant health problems resulting from the mold exposure as set forth above.

## COUNT I
## Fraud §6-5-101

41. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-40 of her Complaint as if the same were fully set out herein.

42. Defendant Tuskegee University and Defendant TFS knew and had direct knowledge at the time of assigning said room to Plaintiff Nelson that Younge Hall had problems with mold infestation.

43. Both Defendants knew as early as March 2015 that it had a mold problem in Younge Hall, but failed to warn Plaintiff and other students.

44. That such knowledge was specifically known to Defendants when the Plaintiff and other students were permitted to move into and occupy Younge Hall in August 2015.

45. More specifically Defendants knew in early August 2015, that the mold was found on the ceiling, furniture and other places in Room 210, which was assigned to Plaintiff Nelson.

46. Defendant TFS painted over the mold in room 210 to hide and conceal it from Plaintiff Spires and Plaintiff Nelson.

47. The Defendants by its conduct in permitting Plaintiff and other students to move in misrepresented to Plaintiff and others that Younge Hall was safe to inhabit and that it was free from known environmental health and safety risk.

48. Defendants by omission misrepresented either recklessly with knowledge, or recklessly without knowledge or by mistake, but in either event intended that Plaintiff rely on Defendants representation that the building was without known environmental health risk to Plaintiff and other occupants.

49. Defendant TFS had a specific duty under its contract to warn students and protect students from injury.

6

50. Defendant knew or should have known of the unabated health risk to students with pre-existing respiratory problems and to students being exposed to air borne mold spores.

51. By failing to disclose this information to Plaintiff in June or July 2015 was legal fraud.

**WHEREFORE** Plaintiffs demand judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT II
## SUPPRESSION
## §6-5-102

52. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-51 of her Complaint as if the same were fully set out herein.

53. The Defendants suppressed and concealed the material fact of mold infestation as stated above.

54. Defendants knew for at least three months prior to August 2015 that Younge Hall had an unabated mold infestation problem.

55. Defendants was under an obligation to warn Plaintiff and other students of the health risk involved with mold exposure.

56. Defendants knowing of this danger never warned the Plaintiff nor her mother or any other student or parent of the environmental health risk related to mold exposure over a period of time.

57. Defendants had a duty to disclose, because of their superior knowledge and position, that Defendants had not and did not intend on performing a health risk assessment by

experts to determine the risk associated with long term exposure to mold to its students and Plaintiff.

58. This total lack and disregard for student safety was not disclosed to Plaintiff nor parents.

59. Plaintiff relied on and trusted Defendants to provide her any information that would affect her well-being while an occupant in Younge Hall.

60. Defendants had: (1) a duty to disclose to Plaintiff prior to her moving into Younge Hall in August 2015 that Younge Hall had an unabated mold infestation problem, (2) that Defendants had not done a risk assessment nor intended to take any action to abate or fix the problem; (3) the Defendants concealed or failed to disclose these material facts to Plaintiff in June or July, August 2015; (4) the concealment or failure to disclose these facts induced Plaintiff to move into Younge Hall and prevented Plaintiff from assessing the health risk associated with the unabated mold growth occurring in Younge Hall.

61. As a result of this Plaintiff suffered as set forth the statement of facts incurred medical expenses and damages to her personal property, loss of scholarships money, Plaintiff Spires had personal property damage, loan obligations and other cost with traveling back and forth to attend to her daughter.

62. Plaintiff demands compensatory and punitive damages for this outlandish fraudulent conduct.

**WHEREFORE** Plaintiffs demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT III
### Breach of Contract as Against Thompson Facilities Services

63. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-62 of her Complaint as if the same were fully set out herein.

64. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-60 of her Complaint as if the same were fully set out herein.

65. Plaintiff Nelson is a third party beneficiary of the contract between Defendant Tuskegee University and Defendant TFS ("Contract").

66. Sec 6, paragraph (a) (ii) of the contract mandated that TFS "shall be responsible to responding to all service request" from Younge Hall.

67. Defendant TFS further agreed on (b) (ii) it would immediately notify Tuskegee University upon notice of any unsafe or unhealthy conditions and that it would "take all reasonable precautions to protect the safety . . . of students".

68. Defendant TFS also agreed that it would immediate on the same day, fix any maintenance problem affecting the safety of Tuskegee University students including water leaks.

69. Defendant TFS also agreed to maintain air quality _ with hazardous material waste disposed.

70. Defendant TFS also agreed to notify all regulatory agencies of occurrences "that deviate from compliance guidelines and laws".

71. Defendant TFS was in breach of its contract with Tuskegee University when it failed each of these contract provisions listed herein.

72. That the contract provisions were made for the benefit of Plaintiff as a student at Tuskegee University.

As a result of this breach Plaintiff suffered severe respiratory problems, had to withdraw from school, suffered body rashes and sores over her body as a result of mole exposure.

## COUNT III
## Tort of Outrage as against Tuskegee University

73. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-72 of her Complaint as if the same were fully set out herein.

74. The Defendants not only knew of this mold contamination but continued to expose other students living in Younge Hall to mold contamination without informing the student or parents.

75. Defendant represented to students and parents that Younge Hall was a safe residence free from health and safety hazards. Defendants thusly intentionally placed Plaintiff and other students directly in harm's way with total disregard for their safety and welfare.

76. As a result of this outrageous conduct Plaintiff was injured as hereto fore described.

**WHEREFORE** Plaintiffs demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT IV
## Breach of Contract

77. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-76 of her Complaint as if the same were fully set out herein.

78. Plaintiff contracted with Defendants for a dormitory room on the campus of Tuskegee University.

79. As a material consideration Plaintiff paid Defendants money for said room that would be habitable, and free from unreasonable risk of harm.

80. Defendants breached said contract by not providing Plaintiff a room on the campus of Tuskegee University that was habitable and suitable for residing in.

**WHEREFORE** Plaintiffs demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

## COUNT V
### Negligence

81. The Plaintiffs incorporates by reference all the allegations of paragraphs 1-80 of her Complaint as if the same were fully set out herein.

82. Defendants had a duty not to expose Plaintiff to unreasonable risk of harm Defendants breached this duty by placing Plaintiff in a dormitory and dormitory room that Defendants knew or should have known was contaminated with mold. As a result of the breach of this duty Plaintiff was made to inhale toxic mold for long periods of time

83. Defendants had a duty to provide safe housing to Plaintiff and breached this duty as set-forth in the preceding paragraph.

84. The mold inhalation resulted in Plaintiff having to receive several breathing treatment, have problems breathing suffered headaches and dizziness and sleeplessness.

**WHEREFORE** Plaintiffs demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum

of this Circuit Court, as may be assessed by a jury. The amount in controversy exceeds the jurisdictional minimum of this Circuit Court.

**PLAINTIFFS DEMANDS TRIAL BY STRUCK JURY.**

Respectfully Submitted

*/s/ Robert Simms Thompson*
Robert Simms Thompson, THO 039
Tiffany N. Johnson Cole, JOH 173
Attorneys for Plaintiffs
308 North Elm Street
Tuskegee, AL  36083
334-727-6463