# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| KAELA NELSON and SHANNON SPIRES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 3:17-CV-512-WKW [WO] |
| TUSKEGEE UNIVERSITY and THOMPSON FACILITIES SERVICES, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kaela Nelson and her mother, Plaintiff Shannon Spires, filed this suit on April 19, 2017, in the Circuit Court of Macon County, Alabama. (Doc. # 1-1.) They alleged that Defendants Tuskegee University and Thompson Facilities Services, LLC ("Thompson") were negligent and wanton in their handling of mold found in Ms. Nelson's dormitory room while she was a student at Tuskegee. According to the Complaint, Ms. Nelson received several academic scholarships, and Ms. Spires took out student loans for Ms. Nelson to attend Tuskegee to study architecture. (Doc. # 1-1, at 3.) Soon after arriving at Tuskegee, however, Ms. Nelson began suffering from the effects of mold exposure and became extremely ill. She withdrew from school during her first semester and, as a result, "has not

been able to continue her pursuit of becoming an [a]rchitect." (Doc. # 1-1, at 6.) Ms. Nelson then enrolled at the Savannah College of Arts and Design, but her health problems required her to leave that school as well. "To date, [Ms.] Nelson is still suffering from the lingering effects of mold exposure." (Doc. # 1-1, at 6.)

Thompson removed this action on July 31, 2017, pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446(b). According to Thompson, removal was appropriate for three reasons. First, it was timely because Thompson had not yet been served by Plaintiffs when the action was removed. (Doc. # 1, at 2–4.) Second, the parties are diverse: Plaintiffs are citizens of Georgia, and Thompson is a citizen of Delaware, Virginia, and North Carolina. Though Tuskegee — which is a citizen of Alabama — would ordinarily be considered a forum state defendant for purposes of § 1441(b)(2), the university was fraudulently joined because a settlement agreement between Tuskegee and Plaintiffs resolved all claims between those parties. (Doc. # 1, at 10–13.) And third, the amount-in-controversy requirement was met because, even "[t]hough the Complaint is silent as to the exact amount in controversy, the categories of damages Plaintiffs seek in their Complaint demonstrate the amount in controversy exceeds $75,000." (Doc. # 1, at 7.)

Before the court is Plaintiffs' Motion to Remand (Doc. # 8), which has been fully briefed and is ready for adjudication. Plaintiffs assert that Tuskegee University has not been fraudulently joined and that Thompson has not established

the amount in controversy by a preponderance of the evidence. The court agrees that Thompson has not met its burden establishing the amount in controversy. Accordingly, Plaintiffs' motion is due to be granted, and the court need not address the fraudulent joinder issue.

## I. STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). At the same time, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Hence, in actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of establishing federal jurisdiction on the defendant. *Id.*

A federal district court may exercise subject-matter jurisdiction over a civil action in which only state-law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Section 1332(a)(1) confers jurisdiction on the federal courts when the dispute is between "citizens of different States," and the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.*

Where the complaint alleges unspecified damages, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the

evidence. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In some cases, the preponderance burden "requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citing *Pretka*, 608 F.3d at 744). "In other cases, however, it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" *Id.* (quoting *Pretka*, 608 F.3d at 754). In either event, the amount in controversy must be measured at the time of removal, not by events occurring afterward. *See Pretka*, 608 F.3d at 751.

## II. DISCUSSION

Thompson acknowledges that Plaintiffs' Complaint "is silent as to the exact amount in controversy," and so provides some guesswork about what monetary relief Plaintiffs might be seeking. (Doc. # 1, at 7.) For instance, noting that the Complaint mentions that Ms. Nelson had scholarships and Ms. Spires took out student loans for Tuskegee tuition, Thompson extrapolates that Plaintiffs "could potentially recover in excess of $120,000.00 for damages associated with loss of [Ms. Nelson's] academic scholarship." (Doc. # 1, at 9.) This number is based on per-year costs for tuition, room, and board of $31,380, and assumes that the scholarships would cover Ms. Nelson's expenses for four years and/or that the

4

student loans Ms. Spires took out — or would take out in the future — would cover the difference. (Doc. # 1, at 8.) Similarly, Thompson points to the line in the Complaint that Ms. Nelson has not been able to pursue her dream of becoming an architect as indicating (1) that Ms. Nelson seeks to recover damages for loss of future earning capacity, (2) the annual mean wage for architects in America is $86,800, (3) Ms. Nelson has a work-life expectancy of at least forty years, and (4) therefore Ms. Nelson is claiming over $3 million in lost earnings. (Doc. # 1, at 9.) Thompson also asserts that Ms. Nelson's medical expenses, while "not apparent on the face of the Complaint," nevertheless "could be substantial" given her need for continued treatment for lingering effects of mold exposure and her past costs for sickness and emotional distress caused by the mold. (Doc. # 1, at 10.)

These calculations are speculative. In reality, the court has no idea from the Complaint or from Thompson's submissions how much scholarship money Ms. Nelson was awarded and had to forfeit[1]; no idea how much student loan debt Ms.

---

[1] In their motion to remand, Plaintiffs submit evidence that Ms. Nelson's scholarship from Tuskegee was valued at $5,000 per year. (Doc. # 8-2, at 1–2.) Thompson contends that this submission is improper because "the court must only look to the facts known at the time of removal." (Doc. # 20, at 5.) But neither case on which Thompson relies says this. *See Poore v. Am.-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1290–91 (11th Cir. 2000), *overruled in part on other grounds by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 640–41 (11th Cir. 2007), and *The Burt Co. v. Clarendon Nat'l Ins. Co.*, 385 F. App'x 892, 894 (11th Cir. 2010). In both *Poore* and *The Burt Company*, the plaintiffs amended their complaints after removal and then argued that the court should rely on the amended pleadings in determining the amount in controversy. The Eleventh Circuit rejected this argument, instead holding that a court should "include in [its] calculation the amount of all claims asserted in the version of the complaint on the date of removal." 385 F. App'x at 894; *see Poore*, 218 F.3d at 1291. That a court looks to the pleadings as they stood at the time of removal, however, does not mean that it is limited only to the facts

Spires took on; no idea how much Ms. Nelson's medical costs were; and no idea of the effect on Ms. Nelson's future that the mold exposure had. While the court is permitted to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings, it cannot "suspend reality or shelve common sense" in determining the amount in controversy. *Roe*, 613 F.3d at 1061–62 (internal quotation marks and citations omitted).

The numbers that Thompson offers are just numbers, guesses at how much money is actually at issue. Perhaps Thompson is correct that Ms. Nelson's medical expenses were great, or that the costs of forfeiting the scholarships at Tuskegee and transferring to a different school added up to more than $75,000, or that Ms. Nelson is claiming all the future earnings she would have made had she become an architect. But perhaps not. Based on the evidence before it, the court really has no way of knowing. On this record, "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of

---

clearly alleged in the complaint. Rather, "the court will consider first whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. If it is not, the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." *Pretka*, 608 F.3d at 754 (quoting 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.14[2][g], at 107–86.4 to 107–86.5 (3d ed. 2010)). Thompson acknowledges as much by submitting evidence of its own purporting to show that a full scholarship that covered room, board, and tuition would be valued at $31,380 per year. (Doc. # 1, at 9.) It just so happens that Plaintiffs' submission shows the actual scholarship Ms. Nelson was awarded. (Doc. # 8-2.) Yet even if this were not the case, and even if the court did not rely on Plaintiffs' additional evidence, the point remains that Thompson has not carried its burden of showing that the deductions it made were reasonable and grounded, in some way, to the factual allegations made in the complaint.

jurisdiction should not be divined by looking to the stars." *Pretka*, 608 F.3d at 752 (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007)). "[N]either the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* (quoting *Lowery*, 483 F.3d at 1214–15).

Thompson has not established this court's amount in controversy by a preponderance of the evidence. Therefore, Plaintiffs' motion to remand is due to be granted.

## III. CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion to Remand (Doc. # 8) is GRANTED and that this action is REMANDED to the Circuit Court of Macon County, Alabama. The Clerk of the Court is DIRECTED to take appropriate steps to effectuate the remand.

DONE this 9th day of April, 2018.

          /s/ W. Keith Watkins
    CHIEF UNITED STATES DISTRICT JUDGE